IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

UNITED STATES OF AMERICA,   \*

v.   \*

                                CRIMINAL NO.: WDQ-10-0770

                          \*

KEVIN GARCIA FUERTES

                          \*

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Kevin Garcia Fuertes[1] was convicted of an interstate prostitution conspiracy,[2] and sex trafficking by force, fraud, or coercion.[3] For the following reasons, Fuertes's motions for a judgment of acquittal or a new trial will be denied.

I. Background

German de Jesus Ventura and Kevin Garcia Fuertes were tried together on interstate prostitution and related charges. Trial was held from April 8 to April 22, 2013. ECF No. 163. On April 15 and 16, 2013, Government witness Esmirna Rebeca Dueñas Franco testified to the following facts.[4]

---

[1] Also known as "Kerlin Esquivel-Fuentes" and "Flaco." ECF No. 51.

[2] In violation of 18 U.S.C. § 371.

[3] In violation of 18 U.S.C. § 1591.

[4] The excerpted official transcripts of Dueñas Franco's testimony will be cited as "RDF Apr. 15 Tr." and "RDF Apr. 16 Tr." While

In or about 2005 or 2006, Dueñas Franco entered the United States illegally[5] at the border in Tamaulipas, Mexico. RDF Apr. 15 Tr. 3:16-17, 6:3-16; 62:15-17. Dueñas Franco initially worked at a recycling plant in Westminster, Maryland, for $400 per week. Id. 7:7-21; 67:12 to 68:4. After the company moved her job to Prince George's County, Maryland, id. 9:15-21, Dueñas Franco met "Alex" at a restaurant, id. 11:10-13; 73:8-16. During the next three months, Dueñas Franco learned that Alex made a living "selling women"; she began working for him as a prostitute, after he threatened to harm her daughter. Id. 11:14-23; 16:8-9; 76:7-9; 78:2-4, 18-24. Alex did not pay Dueñas Franco, despite her sexual contact with "hundreds" of men. RDF Apr. 16 Tr. 20:16-23; 22:5-11; 30:22-25.

Dueñas Franco met Ventura--who "shared" prostitutes with Alex--while she was working for Alex. See RDF Apr. 15 Tr. 12:9-19; 13:10-17; 15:10-12; RDF Apr. 16 Tr. 27:8-18. Dueñas Franco met Fuertes through Ventura; she described him as one of Ventura's employees in the prostitution business. See id. 13:19 to 14:10. After Dueñas Franco told Ventura that she was unhappy working as a prostitute, he offered to take her away from Alex and help her escape the prostitution business. Id. 15:18 to

---

testifying, Dueñas Franco referred to Ventura as "Chino" and to Fuertes as "Flaco." See generally RDF Apr. 15, 16 Trs. The Court will refer to "Chino" as Ventura and "Flaco" as Fuertes.

[5] She has since obtained a work permit. RDF Apr. 15 Tr. 9:3-5.

16:10.  Dueñas Franco left voluntarily with Ventura[6] to live in Annapolis, Maryland; she shared their home with Fuertes.  Id. 16:18-25; 19:2-4.[7]

Dueñas Franco described the beginning of her relationship with Ventura as "very perfect."  RDF Apr. 15 Tr. 17:18-11.  But, sometime in late summer 2008,[8] Ventura handed her a box of condoms and told her she had to "go to work."  Id. 18:1-5; see id. 22:17-25.  She resisted, and Ventura "beat" her "several times."  Id. 18:6-12.

Clients paid $30 for 15 minutes of sex with Dueñas Franco and other women in Ventura's house, who had traveled to the area from Virginia and New York.  Id. 20:1-8.  The other women kept 50% of their earnings; Dueñas Franco kept none.  Id. 20:9-11; 21:7-14.[9]  Dueñas Franco testified that Ventura "forced" her to have sex at Madison Court, but that Fuertes was not present when she engaged in the sexual acts.  Id. 24:23 to 25:7.

---

[6] Dueñas Franco was accompanied by her daughter, who had been born in 2006.  RDF Apr. 15 Tr. 17:3-7; 70:10-18.

[7] Dueñas Franco testified that she lived at "Madison Court."  RDF Apr. 15 Tr. 22:12-16.  The Government established that the address was 1009 Madison Court in Annapolis, Maryland.  See, e.g., ECF No. 2 ¶¶ 21-22; Apr. 3, 2013 Motions Hearing [hereinafter, "Hr'g"].  See generally ECF No. 161 at 7-8.

[8] See RDF Apr. 16 Tr. 31:21-24; 87:14-20.
[9] See also RDF Apr. 16 Tr. 39:12-15.

On September 26, 2008, officers from the Annapolis Police Department searched the Madison Court home. Hr'g. Thereafter, Dueñas Franco left Madison Court and returned to work at the recycling plant. RDF Apr. 16 Tr. 14:19 to 15:7. Dueñas Franco saw Ventura at the plant "quite often." Id. 15:8-12. At night, Dueñas Franco resumed prostitution. Id. 40:21 to 41:5.

Some time in late 2008 or early 2009,[10] Dueñas Franco, Fuertes, and Ventura moved to Hollins Ferry Road in Glen Burnie, Maryland. RDF Apr. 15 Tr. 45:10-18. Fuertes and Ventura ran the Hollins Ferry prostitution business together. Id. 26:8-12. Ventura paid Fuertes $300 per week for "advertising" the business and "tak[ing] care of" the women. Id. 28:14-22. Fuertes was paid, in part, with money that Dueñas Franco earned as a prostitute. Id. 28:23 to 29:5. For seven to eight months, Dueñas Franco was only allowed to leave the Hollins Ferry home – accompanied by Ventura – to engage in prostitution or to shop. See generally RDF Apr. 16 Tr. 77-79.

Dueñas Franco was afraid of Ventura, but not of Fuertes, because Fuertes never restrained or hit her. Id. 60:4-9; RDF Apr. 16 Tr. 81:15 to 82:1. However, her relationship with Fuertes "wasn't that great." RDF Apr. 16 Tr. 81:12-14. Fuertes saw Ventura beat her while she was at Hollins Ferry. RDF Apr.

---

[10] Dueñas Franco could not recall the date.

4

15 Tr. 25:8-17.[11]  Dueñas Franco worked as a prostitute until Ventura's arrest on November 15, 2010.  RDF Apr. 15 Tr. 54:7-10.

On April 22, 2013, the jury found Fuertes guilty on Counts One and Six, and not guilty on Count Two.  On May 1, 2013, Fuertes and Ventura jointly moved for judgment of acquittal or a new trial.  ECF No. 200.[12]  On July 1, 2013, Fuertes supplemented the motion.  ECF No. 215.  On August 26, 2013, the Government responded to Fuertes's motions.  ECF No. 242.

II. Analysis

Fuertes argues that the evidence was insufficient to sustain his convictions, and the verdict was against the weight of the evidence.  ECF No. 200 at 2.[13]  Federal Rules of Criminal Procedure 29 and 33 govern motions for judgment of acquittal and new trial, respectively.  The motions are governed by different standards.

---

[11] On direct examination, Dueñas Franco testified that Fuertes was in the same house--but not the same room--when Ventura beat her with a belt.  RDF Apr. 15 Tr. 28:1-4.  On redirect, Dueñas Franco stated that Fuertes witnessed the beating with a belt. RDF Apr. 16 Tr. 94:13 to 95:5.

[12] The motion contained a "stipulation of opposition," which provided that the Government opposed the requested relief, but "need only . . . respon[d] to the final defense filing."  ECF No. 200 at 3.

[13] Without elaboration, Fuertes also "reasserts each and every ground previously set forth" in motions and objections at trial. ECF No. 200 at 2.  Because Fuertes has provided no grounds for reconsidering these arguments, the Court will not change the earlier rulings.

A Rule 29 motion challenges the sufficiency of the evidence supporting the conviction. The Court must determine whether, "viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt."[14]

Rule 33 allows a district court to grant a new trial in the interest of justice. See Fed. R. Crim. P. 33; *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985). One basis for granting a new trial under Rule 33 is that the jury's verdict was against the weight of the evidence. *Arrington*, 757 F.2d at 1485. When a defendant relies on this basis, "the court's authority is much broader" than under Rule 29. *Id.* The court "is not constrained by the requirement that it view the evidence in the light most favorable to the government," and it may evaluate the credibility of witnesses. *Id.* This discretion, though broad, should be exercised "sparingly;" a new trial should be granted "only when the evidence weighs heavily against the verdict." *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003).

Fuertes's motion fails under both standards. Fuertes argues that the verdict on Count Six was unsupported by adequate evidence because there was no basis for finding that Fuertes

---

[14] *United States v. Harvey*, 532 F.3d 326, 333 (4th Cir. 2008) (internal citation and quotation marks omitted).

recklessly disregarded force, threats of force, fraud, or coercion used to cause Dueñas Franco to engage in commercial sexual acts.[15]  *See* ECF No. 215 at 2-3.  The sex trafficking by force, fraud, or coercion requires that an individual: (1) knowingly recruit, entice, harbor, transport, provide, and obtain by any means a person, or knowingly benefit, financially or by receiving anything of value, from participation in a venture engaged in such acts; (2) knowing or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion, or any combination of such means will be used to cause the person to engage in a commercial sexual act.  *See* 18 U.S.C. § 1591(a).  Before December 23, 2008, the statute required actual knowledge; however, the statute was amended to include reckless disregard of the facts of force, threats, or coercion.  *See* 18 U.S.C. § 1591(a) (2006) (current version at 18 U.S.C. § 1591(a) (2008)).

Viewing the evidence in the light most favorable to the government, a rational trier of fact could have found beyond a reasonable doubt that Fuertes knew, or recklessly disregarded, that force was used to cause Dueñas Franco to engage in

---

[15] Without elaboration Fuertes generally asserts in the Consolidated Joint Defense Post-Trial Motions that Counts One and Six were "unsupported by adequate evidence" and "against the weight of the evidence." *See* ECF No. 200 at 2.  However, his Supplemental Motion addresses only Count Six.  *See generally*, ECF No. 215.  The Government's evidence supported the jury's verdict on Count One.

prostitution. The evidence showed that in 2008, Fuertes lived with Ventura and Dueñas Franco at Madison Court, and Fuertes worked as an employee of Ventura's prostitution business. RDF Apr. 15 Tr. 18:24 to 19:4. When she lived at Madison Court with Fuertes, Ventura forced Dueñas Franco to engage in prostitution and beat her when she resisted. Id. 18:6-12, 24:23 to 25:7.

In late 2008 or early 2009, Fuertes, Ventura, and Dueñas Franco moved to an address on Hollins Ferry Road. RDF Apr. 15 Tr. 45:10-18, 26:8-12. Fuertes and Ventura jointly ran the prostitution business at Hollins Ferry in which Dueñas Franco was forced to work. See id. 26:8-12. Dueñas Franco testified that Fuertes witnessed Ventura beating her at Hollins Ferry. Id. 25:8-17. For seven to eight months while living at Hollins Ferry, Ventura did not permit Dueñas Franco to leave the house alone, and she was accompanied by either Ventura or "his workers" at all times. RDF Apr. 16 Tr. 78:1-20. She was only permitted to go outside with Ventura or Fuertes. Apr. 15 Tr. 46:21 to 47:6. While working at Hollins Ferry, Ventura paid Fuertes $300 per week for "advertising" the business and "tak[ing] care of" the women. Id. 28:14-22. Fuertes was paid with money that Dueñas Franco had earned from prostitution. Id. 28:23 to 29:5.

This evidence supports the jury's determination that Fuertes financially benefitted from Ventura's prostitution

8

enterprise which forced Dueñas Franco to engage in commercial sex acts. Additionally, a rational trier of fact could have found beyond a reasonable doubt that, after December 23, 2008, Fuertes recklessly disregarded Ventura's use of force, threats, or coercion to cause Dueñas Franco to engage in prostitution. The Government's evidence, under either Rule 29 or Rule 33, supported the jury's verdict against Fuertes.

III. Conclusion

For the reasons stated above, Fuertes's motions for acquittal or a new trial will be denied.

9/10/13
Date

William D. Quarles, Jr.
United States District Judge